## 74860. ITT BUSINESS SERVICES CORPORATION et al. v. ROBERTS.
### (362 SE2d 496)

POPE, Judge.

Plaintiff ITT Business Services Corporation (hereinafter ITT-Missouri) brought this action for declaratory judgment against defendant Tax Commissioner of Fulton County, seeking the release of certain real property from a tax lien. By amendment, ITT Commercial Finance Corporation (hereinafter ITT-Delaware), a commonly owned and controlled corporation, was added as a second party plaintiff. Plaintiffs allege that one or both of them are owners or the holders of an equity, lien, or interest in or on real property returned or assessed of American Food Purveyors, Inc. (hereinafter AFP) located in Atlanta, Fulton County. As to that realty, plaintiffs contend they are entitled to the protections of OCGA §§ 48-5-25 and 48-5-28 (b) against defendant's recorded liens for 1981 and 1982 personal property taxes of AFP. This appeal arises from the trial court's grant of defendant's motion for summary judgment.

The facts of record are substantially without dispute. AFP operated a wholesale food business and food processing plant and owned certain improved real estate located in Atlanta, Fulton County. In 1979 AFP borrowed money from the Citizens Trust Bank and executed a deed to secure debt in favor of the bank on the real property. Beginning in 1980 ITT-Delaware made the first of a series of loans to AFP. These loans were modified from time to time and secured by two deeds to secure debt on the real property and by Uniform Commercial Code financing statements on the personal property of AFP. On or about March 1, of 1981 and of 1982, AFP filed a schedule of its assets, liabilities and net worth for tax years 1981 and 1982, respectively, with the taxing authorities of Fulton County. Ad valorem taxes for 1981 and 1982 were assessed on the real and the personal property of AFP as of January 1, 1981 and January 1, 1982, respectively. Based upon the assessments, AFP was billed for the respective ad valorem taxes.

As of January 1, 1983 ITT-Delaware had loaned millions of dollars to AFP, which was then in default on its loans. ITT-Delaware's management determined that AFP's financial situation was so dire that it should foreclose on its security. A title search made at that time showed an outstanding recorded judgment lien by a creditor. ITT-Delaware was alerted by its Georgia counsel to the doctrine of merger. Counsel advised, "[I]f the deed in lieu of foreclosure were recorded, that judgment creditor's interest would be superior to the fee interest to be acquired through that deed. Of course, it was recognized that title was being taken not in the name of [ITT-Delaware], the holder of the mortgage, but, rather, in the name of [ITT-Mis-

souri]. The thinking was that in that manner our mortgage would be protected from application of [the] doctrine of merger and, if necessary, we could foreclose out any subsequent mortgage or lien creditor. Of course, because of the affiliation of the two companies, whether that ploy will work is open to some question."

On January 23, 1983 AFP executed a warranty deed for the real property to ITT-Missouri subject to the deeds to secure debt held by Citizens Trust Bank and ITT-Delaware. The consideration of the deed was $1,000,000 credit by ITT-Delaware against the account debt of AFP. ITT-Missouri was designated as the grantee by common management to purchase the real property of AFP in 1983 in order to protect the interests of ITT-Delaware in the property. On January 27, 1983 AFP executed a bill of sale on its personal property to ITT-Missouri.

On April 19, 1983 and June 29, 1983 fieri facias (fi. fas.) for personal property taxes owed by AFP for 1981 and 1982 were recorded on the general execution docket in Fulton County. Simon Visser, a vice president of both ITT-Delaware and of ITT-Missouri, knew that AFP owed ad valorem taxes to the City of Atlanta and to Fulton County in late 1982 or early 1983. In May 1983 Citizens Trust Bank commenced foreclosure proceedings on the real property. On June 7, 1983 ITT-Missouri bought the real property at a judicial sale. The consideration for the purchase was $331,647.42 cash supplied by ITT-Delaware.

On August 10, 1984 ITT-Missouri agreed in writing to sell the real property together with the personal property located thereon to Thomas L. Moore. On the dates of August 23 and 24, 1984, ITT-Missouri executed the following instruments: (a) a bill of sale to Thomas L. Moore for the personal property of AFP; (b) a quitclaim deed to Thomas L. Moore for the real property; and (c) an owner's affidavit with respect to the real property and the personal property located thereon. In consideration of the above, Moore delivered a promissory note to ITT-Missouri. On August 23, 1984 ITT-Delaware released its 1980 deed to secure debt on the real property and ITT-Missouri indemnified Thomas L. Moore with respect to 1981 and 1982 personal property ad valorem taxes on any and all personal property located on the premises of the real property.

On or about August 31, 1983 an attorney for plaintiffs tendered a check to defendant in the amount of $8,980.42 in payment for ad valorem taxes due on the personal property of AFP for 1981 and 1982 and requested a release pursuant to OCGA § 48-5-25. Said tender was refused by the defendant, and no release was issued. On or about July 3, 1984 defendant levied two fi. fas. on the real property and served notice that he would proceed to sell the property in September 1984 to satisfy tax fi. fas. against AFP for 1981 and 1982 taxes.

By order of court entered in this action in August 1984, the real property and personal property located thereon were sold free and clear of any tax liens subject to payment by ITT-Missouri from the proceeds of such sale of the sum of $85,979.89 for personal property taxes of AFP for tax years 1981 and 1982, including interest, penalties and costs.

As is pertinent to the issues in this case, OCGA § 48-5-25 provides: "The owner or the holder of any equity, lien, or interest in or on property returned or assessed with other property for taxes shall be allowed to pay the taxes assessed against any one or more pieces of such property: . . . by paying the proportionate part of the taxes represented by such property according to the valuation in the return or assessment. . . . The officials charged with the collection of taxes . . . shall be required to accept payment of the taxes when tender is made as provided in this Code section, shall issue a receipt showing the payment, and shall execute a release of the property from the lien for taxes." OCGA § 48-5-28 (b) provides: "The title and operation of a security deed shall be superior to the taxes assessed against the owner of property when the tax represents an assessment upon property of the owner other than that property specifically subject to the title and operation of the security deed."

Plaintiffs argue that ITT-Delaware's use of its "sister corporation," ITT-Missouri, should not deprive it of the benefits of the foregoing statutes. In support of this contention, plaintiffs cite the affidavit of the vice president of ITT-Delaware: "ITT Commercial Finance Corp. . . . is a Delaware corporation [ITT-Delaware], and a wholly-owned subsidiary of ITT Finance Corporation. ITT Business Services Corporation . . . is a Missouri corporation [ITT-Missouri], organized in 1978 as a wholly-owned subsidiary of [ITT-Delaware]. In 1980, [ITT-Delaware] transferred the stock of the Missouri corporation to ITT Financial Corporation. After the stock transfer . . . , although the Missouri corporation and [ITT-Delaware] were technically "sister corporations," the Missouri corporation was at all times and is currently operated as a de facto subsidiary of [ITT-Delaware], as shown by the following: (a) all the directors and the officers of the Missouri corporation have been and are also directors and/or officers of [ITT-Delaware], and, in particular, Melvin F. Brown was and is the president of both corporations; and (b) the managers of the Missouri corporation report directly to the managers of [ITT-Delaware]; and (c) the results of the Missouri corporation's operations are consolidated into the statements of [ITT-Delaware] results; and (d) all funds required by the Missouri corporation for its operations have at all times been provided by [ITT-Delaware. ITT-Delaware and ITT-Missouri] have a vital concern about and a direct tangible interest in the business operations of each other. [ITT-Delaware] caused [ITT-Missouri]

to take title to the former American Food Purveyors, Inc. property in order to provide protection (against intervening judgment lien creditors) that would not have been available had [ITT-Delaware] taken title and its mortgage been eliminated by merger. All consideration paid in connection with [ITT-Missouri's] acquisition of title to the property was provided by [ITT-Delaware]."

In essence plaintiffs argue that based on the foregoing factors, we should disregard the corporate entity of ITT-Missouri in favor of ITT-Delaware for tax purposes, notwithstanding ITT-Delaware's use of the corporate entity of ITT-Missouri as the grantee of the real estate to avoid the doctrine of merger. "Volumes have been written on the subject of 'piercing the corporate veil,' etc. Many theories have been advanced as to the reasons why courts should disregard the separate corporate existence of a one-man corporation or a subsidiary corporation. By whatever means the conclusion to disregard corporate entity is arrived at, when it is reached it merely means that under the facts of the case the person or corporation in control of the subservient corporation is held liable for the acts or omissions of the subservient corporation. No hard and fast rule can be laid down, but it seems clear that so long as the law authorizes the formation of subservient corporations, the law would defeat its own purpose by disregarding its own creature merely because a parent corporation, or other sole owner, controls the subsidiary, or one-man corporation, and uses it and controls it to promote his or its ends." *Condenser Svc. &c. Co. v. Brunswick Port Auth.*, 87 Ga. App. 469, 474 (74 SE2d 398) (1953). "This is true also in respect to tax problems." *Schwob Mfg. Co. v Huiet*, 69 Ga. App. 285 (1) (25 SE2d 149) (1943). There is no evidence that the incorporation of ITT-Missouri was a sham or that it was used to defeat a public convenience, to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of ITT-Missouri's separate entity. See, e.g., *Boafo v. Hosp. Corp. of America*, 177 Ga. App. 75 (338 SE2d 477) (1985); *Jenkins v. Judith Sans Intl.*, 175 Ga. App. 171 (1) (332 SE2d 687) (1985), and cits.; *Collins v. Booker*, 129 Ga. App. 824 (1) (201 SE2d 676) (1973), and cits. See generally *Roberts v. Chancellor Fleet Corp.*, 182 Ga. App. 69 (3) (354 SE2d 628) (1987).

In light of the foregoing, we find this case controlled by the holding in *Brown v. Nash*, 216 Ga. 303 (116 SE2d 227) (1960), which we paraphrase here: At the time plaintiff ITT-Missouri purchased the property in January of 1983, the liens for the years 1981 and 1982 as to the assessment of real and personal property owned by AFP had become fixed. At the time the liens became effective and at the time it purchased the property ITT-Missouri was not the owner or the holder of any equity, lien, or interest in the real estate which it purchased. It bought the property with knowledge of the existence of the

liens, covering the personal property taxes, against the property. It obtained no better title than that held by its grantor. AFP could not have obtained a release of the real property without payment of the personal property taxes. Neither can its grantee, ITT-Missouri.

"The case of *Aldridge v. Federal Land Bank of Columbia*, 203 Ga. 285 (46 SE2d 578) [(1948)], is not applicable here. There the party seeking to pay taxes assessed against a trac[t] of land and to obtain a release of the lien without paying the taxes assessed against the personal property of the taxpayer, held a deed to secure debt to the real estate at the time the taxes were assessed." *Brown v. Nash*, 216 Ga. at 305, supra.

The trial court properly entered summary judgment in favor of defendant tax commissioner.

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED NOVEMBER 4, 1987.

*John M. Sikes, Jr.*, for appellants.
*Harold T. Daniel, Jr.*, for appellee.