

A02A1022. YUKON PARTNERS, INC. v. LODGE KEEPER GROUP, INC.

A02A1023. FLAMINGO PROPERTIES, LLC v. LODGE KEEPER GROUP, INC.

A02A1024. PLATTE CITY SUPER 8, LLC v. LODGE KEEPER GROUP, INC.

A02A1025. CHILLICOTHE SUPER 8, LLC v. LODGE KEEPER GROUP, INC.

A02A1026. OVERLAND PARTNERS, LLC v. LODGE KEEPER GROUP, INC.

A02A1027. BRMG, LLC v. LODGE KEEPER GROUP, INC.

A02A1028. QUALITY LODGING, LLC v. LODGE KEEPER GROUP, INC.

A02A1029. GARDNER SUPER 8, LLC v. LODGE KEEPER GROUP, INC.

(572 SE2d 647)

SMITH, Presiding Judge.

The trial court issued a single order in the seven related cases underlying these eight appeals, denying the defendant-appellants' motions to dismiss for lack of personal jurisdiction. The trial court erred in denying the motions to dismiss, primarily because it imputed the activities of separate and distinct entities and individuals to the appellants in order to find that their contracts with appellee The Lodge Keeper Group, Inc. ("Lodge Keeper") were "part of a series of related transactions" and thus to impose personal jurisdiction. For these reasons, we reverse.

Under OCGA § 9-10-91 (1), a Georgia court may exercise personal jurisdiction over a nonresident defendant who "[t]ransacts any business within this state."

A defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. To meet that burden, the defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence.

(Citations omitted.) *McHale v. HJGM, Inc.*, 252 Ga. App. 641, 642 (1) (556 SE2d 853) (2001).

If the motion is decided on the basis of written submissions alone, as was the motion in this case, disputes of fact found in the affidavits are resolved in favor of plaintiff. Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard.

(Citations and punctuation omitted.) *Southern Electronics Distrib. v. Anderson*, 232 Ga. App. 648 (1) (502 SE2d 257) (1998). With these standards in mind, we address the facts in the records below.

Appellants are Missouri corporations or limited liability companies. Seven of the Missouri entities ("the hotel entities") own hotels located in Missouri, Kansas, or Oklahoma. Yukon Partners, Inc. ("Yukon"), Flamingo Properties, LLC ("Flamingo"), Platte City Super 8, LLC ("Platte City"), Chillicothe Super 8, LLC ("Chillicothe"), and Gardner Super 8, LLC ("Gardner") executed written agreements with Lodge Keeper, an Ohio corporation, under which Lodge Keeper agreed to manage the hotel properties. BRMG, LLC and Overland Partners, LLC ("Overland") did not have written management agreements but instead had an oral at-will management relationship with Lodge Keeper. The eighth entity, Quality Lodging, LLC ("Quality Lodging"), executed a letter indemnification agreement on behalf of appellant BRMG and was sued on that agreement.

All the management agreements are in essence identical, containing blanks into which the names of the various hotel entities and

the hotels are inserted.[1] The agreements contain two provisions relevant to application of the Georgia statute: a choice of laws provision in paragraph 10 (a) providing that Georgia law shall govern "the interpretations, validity and performance of this agreement," and a recitation above the signatures stating "IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this agreement at Atlanta, Georgia, on the day and year first above written." Hotel entities Yukon, Flamingo, Platte City, Chillicothe, and Gardner filed affidavits denying that the management agreements were executed in Georgia. Instead, the affiants declared that the agreements were negotiated in Missouri, that appellants executed the agreements in Missouri, that Lodge Keeper executed them in Ohio or Missouri, and that at the time of execution Lodge Keeper's principal place of business was in Ohio.[2]

Affidavits on behalf of each hotel entity stated that each was not and had never been an affiliate of Quality Lodging, that it was a separate entity, and that neither had legal authority to bind the other. In addition, each affidavit stated that the hotel entity had not entered into any contract or transacted business in Georgia, and did not do any business in Georgia. Affidavits on behalf of the hotel entities without written management agreements also stated that the hotel entity was not licensed to do business in Georgia.

In response, Lodge Keeper filed the same affidavit of Douglas Collins, the President and CEO of Buckhead America Corporation ("Buckhead"), in each case. Collins did not contradict the hotel entities' contentions regarding their lack of affiliate status, the execution of the agreements, their lack of contacts with Georgia, or Lodge Keeper's place of doing business at the time of execution of the agreements. Instead, he laid out a complex series of negotiations and agreements between various entities owned, controlled, or affiliated with Buckhead and various entities owned or controlled by two individuals, Gary Sirna and Stephen Danner, who also held some interest in the hotel entities involved in this appeal. Through Collins's affidavit, Lodge Keeper relies on the conduct of these other entities and individuals, not the conduct of the hotel entities themselves, in an effort to establish the contacts necessary for imposition of long-arm jurisdiction in Georgia. None of these entities or individuals, however, is a party to these actions.

---

[1] In counterclaims filed by those hotel entities with written management agreements, they allege that the agreements were drafted by Lodge Keeper. But under Georgia law no answer is required to a counterclaim, and all allegations therein stand denied. OCGA § 9-11-12 (a). None of the affidavits filed by the parties addresses the authorship of the written management agreements.

[2] It appears from the complaints and amended complaints in these actions that Lodge Keeper later relocated its principal place of business to Georgia.

According to Collins, in 1997 a five-year franchising and development agreement was executed between Buckhead's "affiliate" BAC Franchising, Inc. and Quality Lodging, an entity solely owned by Sirna and Danner. This agreement recites that BAC is a Delaware corporation with its principal place of business in Georgia, and a related promissory note recites that Buckhead is a Delaware corporation.[3] In 1999, according to Collins, Sirna and Danner approached Buckhead with a proposal for Buckhead to take over the management of several hotels in which they held ownership interests, and an agreement was executed between Buckhead and Quality Lodging styled "Purchase and Assignment of Hotel Management Agreements." Collins also stated that Sirna and Danner traveled to Georgia on at least four occasions in connection with their dealings with Buckhead.

From this evidence, the trial court concluded that Quality Lodging was an "affiliate" of all the hotel entities and that the hotel entities therefore "transacted business in Georgia by entering into the management agreements with The Lodge Keeper or letting The Lodge Keeper manage their properties as part of an overall transaction for the sale and assignment of management contracts by their affiliate Quality Lodging to Buckhead." The court also found that the hotel entities "purposely directed their activities — the management contracts — at Georgia" and relied on the "multiple choice of law and forum selection clauses in the various agreements, when combined with the ongoing relationship between the parties," to find that the hotel entities "were deliberately affiliated with Georgia and there was a reasonable foreseeability of litigation here." Consequently, it denied all motions to dismiss, and this appeal followed.

The Georgia Long-Arm Statute confers jurisdiction over nonresidents to the maximum extent permitted by due process. *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58 (195 SE2d 399) (1973). Due process requires that individuals have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." (Citation and punctuation omitted.) *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 472 (II) (A) (105 SC 2174, 85 LE2d 528) (1985). Mere "random," "fortuitous," or "attenuated" contacts are insufficient. Id. at 475.

> Our courts have considered the "minimum contacts" needed to confer personal jurisdiction over a nonresident. Three rules to determine the power of this state to exercise jurisdiction over a nonresident have been gleaned. The rules are:

---

[3] Lodge Keeper's complaint or amended complaint in each case, on the other hand, alleges that Buckhead is a Georgia corporation.

(1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum; (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum and (3) If (and only if) the requirements of Rules 1 and 2 are established, a minimum contact between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of fair play and substantial justice. In other words, the exercise of jurisdiction based upon the minimum contact must be reasonable.

(Citation and punctuation omitted.) *Smith v. Smith*, 254 Ga. 450, 453 (3) (330 SE2d 706) (1985); see also *Beasley v. Beasley*, 260 Ga. 419, 421 (396 SE2d 222) (1990).

It is apparent from the facts stated above that these defendants have performed no acts demonstrating an intent to avail themselves of the laws of Georgia. While Lodge Keeper argues that the overall business relationship between Buckhead and Quality Lodging should guide the determination of personal jurisdiction, this argument is not supported by Georgia law or by the facts presented here. The management agreements do not provide that they were executed in contemplation of a master plan or agreement between Buckhead and Quality Lodging and do not incorporate those documents by reference. They impose no obligations or rights on either Buckhead or Quality Lodging, which are not parties to the agreements. In fact, they do not mention these entities at all, although they do permit Lodge Keeper, at its option, to assign its rights and obligations to BAC "or to any subsidiary or affiliate of BAC." The record does not reveal, however, that this option was exercised in any case, and thus any potential relevance of the agreements to BAC never materialized. The management agreements show only that they were made between various Missouri entities and an Ohio corporation for performance in Missouri, Kansas, and Oklahoma.

While noting the ownership interests held by Sirna or Danner, or both, in the hotel entities, Lodge Keeper does not contend and presents no evidence that the corporate forms were disregarded or that other conduct justifying "piercing the corporate veil" occurred. Georgia still recognizes corporate identity as separate from that of its principals or owners, so long as the corporate forms are maintained. "The law of corporations is founded on the legal principle that each corporation is a separate entity, distinct and apart from its stockholders. We have long recognized that great caution should be exercised by the court in disregarding the corporate entity." (Citations

and punctuation omitted.) *Hickman v. Hyzer*, 261 Ga. 38, 39 (1) (401 SE2d 738) (1991). And a member of a limited liability company similarly is considered separate from the company and "is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company," except in the case of actions by the member or derivative actions. OCGA § 14-11-1107 (j); see also OCGA § 14-11-702 (b) (enumerating activities not considered "transacting business in this state" by limited liability company).

While the trial court found that the hotel entities were "affiliates" of Quality Lodging, the only evidence on the record with respect to the issue of affiliation consists of the hotel entities' denials that they are affiliates of Quality Lodging and their assertions that the hotel entities and Quality Lodging do not have the legal authority to bind one another. As noted above, once a defendant has controverted the allegations of the complaint by affidavit, a plaintiff must come forward with affidavits or other documentary evidence supporting its allegations. *McHale*, supra, 252 Ga. App. at 642 (1). This Lodge Keeper failed to do with respect to its allegation that the hotel entities were "affiliates" of Quality Lodging, and the trial court therefore was not authorized to make this finding.

In any event, the mere existence of some unspecified "affiliation" is not sufficient to pierce the corporate veil.

> By whatever means the conclusion to disregard corporate entity is arrived at, when it is reached it merely means that under the facts of the case the person or corporation in control of the subservient corporation is held liable for the acts or omissions of the subservient corporation. No hard and fast rule can be laid down, but it seems clear that so long as the law authorizes the formation of subservient corporations, the law would defeat its own purpose by disregarding its own creature merely because a parent corporation, or other sole owner, controls the subsidiary, or one-man corporation, and uses it and controls it to promote his or its ends.

(Citation and punctuation omitted.) *ITT Business Svcs. Corp. v. Roberts*, 184 Ga. App. 764, 767 (362 SE2d 496) (1987). Lodge Keeper having failed to present evidence that the incorporation of the hotel entities "was a sham or that it was used to defeat a public convenience, to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard" of the corporate entities, id., the activities or contacts of entities or individuals other than the defendant hotel entities are irrelevant to a consideration of personal jurisdiction over the hotel entities.

*Drennen v. First Home Sav. Bank*, 204 Ga. App. 714 (420 SE2d 376) (1992), relied upon by the trial court, is distinguished on its facts. In *Drennen*, the individual defendants were directly and personally involved with a Georgia business enterprise. One of the defendants owned real property in Georgia and sold it to a corporation formed by the defendants to develop and manage a motel on the site. Id. at 714-715. The corporation was formed in Alabama but was registered to do business in Georgia. Id. at 714. The defendants executed individual guarantees of a note on behalf of the corporation for the purpose of funding the construction of the motel. Id. at 716-717. We held that the individual defendants could be sued in Georgia on their guarantees even though the guarantees themselves were executed outside the state. Id. at 717.

These hotel entities never negotiated or executed any agreement with a Georgia entity, never visited Georgia, and never contemplated performance of any business in Georgia. In essence, these Missouri entities entered into agreements with an Ohio corporation for performance in Missouri, Kansas, and Oklahoma. The Ohio corporation's position as a subsidiary of Buckhead, a Delaware corporation, and the dealings in Georgia of a separate "affiliate" of Buckhead with two individuals who also held an interest in the Missouri entities are irrelevant to consideration of the contacts of the appellant entities with Georgia. This double chain of relationships through nonparties, both as to appellants and appellee, is too tenuous to support personal jurisdiction. Appellants could not reasonably anticipate being haled into court in Georgia by reason of Sirna or Danner, acting on behalf of a separate entity, entering into other negotiations and contracts with still other separate entities affiliated with the Ohio corporation with which appellants contracted. The trial court therefore erred in denying the hotel entities' motions to dismiss.

With respect to those hotel entities that executed written management agreements, Lodge Keeper argues that the choice of laws provision and the contract's recitation that the agreements were executed in Georgia provide a basis for the exercise of personal jurisdiction. But "a contractual provision choosing to apply Georgia law to resolve disputes under a contract is not sufficient, standing alone, to subject a party to the contract to personal jurisdiction under the Georgia long-arm statute." (Citation omitted.) *HTL Sp. Z O.O. v. Nissho Corp.*, 245 Ga. App. 625, 627 (538 SE2d 525) (2000). In *HTL*, the additional factor to show "purposeful activity" was sales activities in Georgia by the nonresident defendant reselling the items sold to it by HTL. Id. Here, in contrast, the hotel entities had no other contacts with Georgia.

While Lodge Keeper also argues that the signature line, declaring that the contract was executed in Georgia, should be construed as

the equivalent of a consent to jurisdiction, this is not in accordance with Georgia law. "Contractual clauses providing advance consent to the jurisdiction of a court which would not otherwise have personal jurisdiction are valid and enforceable." (Citations omitted.) *Brown v. U. S. Fidelity &c. Co.*, 208 Ga. App. 834, 835 (2) (432 SE2d 256) (1993). But even an explicit consent to jurisdiction provision in a contract may be so "broad and nonspecific" as to be unreasonable. *Central Ohio Graphics v. Alco Capital Resource*, 221 Ga. App. 434, 435 (472 SE2d 2) (1996). Here, the supposed agreements are mere recitations with respect to the place of execution in the signature blocks of the agreements, not a separate provision in the body of the agreements explicitly consenting to jurisdiction. Such an ambiguous statement cannot be considered "a meeting of the minds sufficient to show the parties reached an agreement on the forum. [Cit.]" Id. Moreover, each hotel entity presented an affidavit denying that the agreements were in fact executed in Georgia, and Lodge Keeper has not controverted that evidence.

Finally, with respect to Quality Lodging, the trial court did not make any findings regarding jurisdiction over that entity. But, as noted by the Supreme Court of Georgia in *Smith*, supra, to confer personal jurisdiction the plaintiff's cause of action must be one that "arises out of, or results from, the activity or activities of the defendant within the forum." (Citation and punctuation omitted.) 254 Ga. at 453 (3). In our de novo review of the record, it is apparent that Lodge Keeper's claims against Quality Lodging in this action do not arise out of or result from Quality Lodging's agreements or negotiations with BAC or Buckhead regarding the master development agreement or the other dealings arising out of that relationship.

Here, Lodge Keeper's claims are based solely on a letter containing an indemnity agreement by Quality Lodging on behalf of BRMG. As noted above, BRMG had no contacts with Georgia and personal jurisdiction cannot be exercised over it in this state on the basis of its agreement with Lodge Keeper. Therefore, Quality Lodging's guarantee of BRMG's obligation to Lodge Keeper under that agreement cannot supply minimum contacts with Georgia, as it is wholly unrelated to the business Quality Lodging may have conducted with entities other than Lodge Keeper in Georgia. *Sky Shots Aerial Photography v. Franks*, 250 Ga. App. 411, 412-413 (551 SE2d 805) (2001) (no personal jurisdiction over nonresident defendant when claims based on "unrelated agreement" concluded in Georgia between another defendant and plaintiff, rather than nonresident defendant's contacts with Georgia).

*Judgments reversed. Eldridge and Ellington, JJ., concur.*

DECIDED SEPTEMBER 27, 2002 —
RECONSIDERATIONS DENIED OCTOBER 15, 2002.

*Powell, Goldstein, Frazer & Murphy, Karen D. Wildau, Adam P. Princenthal*, for appellants.

*Arnall, Golden & Gregory, Robert L. Rothman, Zachary B. Ward, Roger A. Chalmers*, for appellee.