865 So.2d 257 (2004)
HOLIDAY HOSPITALITY FRANCHISING, INC. f/k/a Holiday Inns Franchising, Inc., Plaintiffs-Appellees
v.
Joe Bailey GRANT and Gail L. Grant, Defendants-Appellants.
No. 38,103-CA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2004.
*259 Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for Appellants.
H. Herbert Hobgood, Monroe, for Appellees.
Before WILLIAMS, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
Following a default judgment against them rendered in the State of Georgia, the appellants challenge the enforcement of the judgment in this state asserting that the Georgia court lacked personal jurisdiction over them. The contract underlying the dispute was a license or franchise agreement which one appellant executed with a national hotel chain headquartered in Georgia. The other appellant acted as the guarantor of the agreement. The trial court found that minimum contacts were established by both appellants with the forum state. For the following reasons, we affirm the judgment against the original licensee appellant, but reverse the judgment against the guarantor.

Facts
Joe Bailey Grant and Gail Grant appeal the trial court's judgment in favor of Holiday Hospitality Franchising, Inc., f/k/a Holiday Inns Franchising, Inc. ("Holiday"), recognizing and making executory a Georgia default judgment against them under the Uniform Enforcement of Foreign Judgments Act ("UEFJA"). La. R.S. 13:4241, et seq. The Louisiana trial court found that the Grants had sufficient minimum contacts with the State of Georgia to permit its exercise of jurisdiction over them, and that the judgment was valid, thus entitled to the full faith and credit accorded judgments of sister states under the federal constitution.
The Georgia default judgment noted that the proceedings arose from several contracts between the parties, including a 1994 Holiday Inn license agreement, as amended in 1996, and defendants' personal guaranties of that contract. The judgment, for $1,092,329.02, stated that the amount consisted of unpaid monthly fees, liquidated damages, interest and attorney's fees.
The record shows that the business relationship between Holiday Inns Franchising, Inc. and Joe Bailey Grant ("Grant") was one of franchisor/licensor and franchisee/licensee, respectively, pursuant to which Grant operated the Holiday Inn in Monroe, Louisiana. On December 14, 1994, Holiday and Grant entered a "Renewal License Agreement" (the "1994 Agreement") detailing the specific terms of the franchise. Holiday licensed its "hotel management system" for a ten year term in exchange for Grant's monthly payments of a percentage of the hotel's revenue stream to Holiday. The contract provided that Grant would furnish monthly statements and remittances thereunder, as well as quarterly and annual financial statements subject to review and audit by Holiday *260 in connection with his operation of the Holiday Inn. Gail Grant's separate guaranty was appended to the 1994 Agreement.
The 1994 Agreement provided that the contract "shall be deemed made and entered into in the State of Georgia, and shall be governed and construed under and in accordance with the laws of the State of Georgia." Grant specifically acknowledged that by entering the agreement, he had "sought, voluntarily accepted and become associated with Licensor who is headquartered in Atlanta, Georgia." The Georgia choice of law designation "permits, but does not require that all suits concerning this License shall be filed in the State of Georgia."
On July 22, 1996, Holiday and Grant amended the 1994 Agreement to substitute a new licensee. The amendment recited that Grant was required to change the licensee's name because the hotel was in the process of being refinanced. Investor Inns Limited Partnership, a Louisiana limited partnership ("Investor Inns"), was substituted as the licensee. Investor Inns was comprised of a general corporate partner, Investor Inns, Inc., wholly-owned by Grant, and a limited corporate partner, Sara Gail, Inc., also wholly-owned by Grant. The 1994 Agreement contemplated that a licensee who was a natural person could transfer the license, as follows:
(2) If Licensee is a natural person, he may, without the consent of Licensor, upon 30 days' prior written notice to Licensor, transfer the license to a corporation entirely owned by him, provided that:
(a) adequate provision is made for the management of the Hotel; and
(b) the transferee executes a new license agreement for the unexpired term of this License, on the standard form then being used to license new Hotels under the System, except the fees charged then shall be the same as those contained herein including any adjustments to such fees as may have been implemented from time to time in accordance with the terms of this License; and
(c) the Licensee guarantees, in Licensor's usual form, the performance of the new licensee's obligations hereunder.
Another guaranty, signed by both Grants, was also included with the 1996 amendment. This guaranty warranted the performance of the new licensee's obligations under the 1994 Agreement. The guaranty further provided that it would be governed and construed under the laws of the State of Georgia.
Holiday filed suit in Louisiana under the UEFJA for recognition of the judgment it obtained against the Grants in Georgia. The trial court found that the Georgia judgment was entitled to full faith and credit. Thereafter, the Grants sought to nullify the judgment, alleging that the State of Georgia lacked jurisdiction over them. After the trial court initially granted Holiday's motion to strike the petition for nullity, the Grants appealed.[1] This court's opinion concluded that the Grants were entitled to the opportunity to present evidence that Georgia lacked jurisdiction over them and remanded the proceeding to the trial court with instructions to schedule a contradictory hearing to consider the Grants' arguments.
*261 Joe Bailey Grant was the only witness who testified at the hearing on remand. The substantive portion of the direct examination consisted of the following:
Q. Did you or your wife ever travel to Georgia to contact (sic) any business with Holiday Hospitality?
A. No.
Q. Did you otherwise have any minimal contact with Georgia (sic) Hospitality?
A. No, sir.
Q. I mean Holiday Hospitality.
A. No.
* * *
Q. Where was the 1994 license agreement... signed?
A. Monroe, Louisiana.
On cross-examination, Grant indicated that the Holiday Inn had been managed by his family prior to 1994. He testified that he was the president of the hotel's general partner, Investor Inns, Inc., and that was the capacity in which he communicated with and remitted funds to Holiday pursuant to the license agreement. Although he denied ever sending money to Holiday personally, he admitted communicating with them "as an operator" and that he had originally been the individual licensee. Grant also admitted to having negotiations with Holiday when the financial problems of Investor Inns developed. The only evidence presented concerning Mrs. Grant was Mr. Grant's testimony that neither he nor she had ever been domiciled in the State of Georgia.
Following trial, in written reasons, the trial court found that a business relationship existed between Holiday and Grant which predated the 1994 license agreement, that the Grants had minimum contacts with Georgia sufficient to afford that state personal jurisdiction over them, and that the Georgia judgment rendered against them was valid and entitled to full faith and credit in Louisiana. However, the award for attorney's fees in the initial Louisiana judgment was stricken and the court ordered that the Louisiana judgment making the Georgia judgment executory be corrected to parallel the Georgia judgment. It is from this judgment that the Grants appeal.

Discussion
The United States Constitution provides that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. U.S. Const. art. IV § 1. The basic constitutional principles of Full Faith and Credit and Due Process which govern the Grants' attack on the Georgia judgment were discussed by this court in Dunn v. Mortenson, 36,878 (La.App.2d Cir.3/5/03), 839 So.2d 1007, 1011, as follows:
The structure of our nation of states, each possessing equal sovereign powers, however, dictates some basic limitations of the full faith and credit principle. It is established that a court in one state, when asked to give effect to the judgment of a court in another state, "may constitutionally inquire into the foreign court's jurisdiction to render that judgment." Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).
* * *
If that foreign court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given to the sister state's judgment. Nevada v. Hall, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).
The Supreme Court has held that, "it is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over *262 the relevant parties." Underwriters Nat. Assur. Co. v. North Carolina Life and Acc. and Health Ins. Guaranty Ass'n, 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558, (1982). "The requirement that a court have personal jurisdiction recognizes and protects an individual liberty interest, which flows from the Due Process Clause." Schultz v. Doyle, 00-0926 (La.1/17/01), 776 So.2d 1158. The test for personal jurisdiction requires that "the maintenance of the suit ... not offend traditional notions of fair play and substantial justice." International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the `minimum contacts' with that state that are a prerequisite to its existence of power over him." Id.

Although the Grants, collectively and individually, present various arguments for the invalidity of the Georgia judgment, we will first consider whether evidence reveals that meaningful contacts and relations were established by Mr. Grant with the State of Georgia as the result of his dealings with Holiday since 1994. The relevant law to determine whether the foreign court had personal jurisdiction is the law of the forum state rendering the original judgment. Dunn v. Mortenson, supra; Lepard v. Lepard, 31,351 (La.App.2d Cir.12/9/98), 722 So.2d 367. The Georgia long-arm statute provides for personal jurisdiction over a non-resident defendant if he "transacts any business within Georgia." O.G.C.A. § 9-10-91.
In order for a forum to exercise jurisdiction over a nonresident defendant who transacts business in the state, the defendant's contacts with the state must satisfy three criteria under the Georgia jurisprudence. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails himself of the privilege of conducting activities with the forum, thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there. Francosteel Corp. v. M/V Charm, 19 F.3d 624 (11th Cir.1994); Drennen v. First Home Savings Bank, 204 Ga.App. 714, 420 S.E.2d 376 (1992). Georgia courts have also held that the Georgia long arm statute confers personal jurisdiction over nonresidents to the maximum extent permitted by due process. Francosteel Corp. v. M/V Charm, supra; SES Industries, Inc. v. Intertrade Packaging Machinery Corp., 236 Ga.App. 418, 512 S.E.2d 316 (1999).
From our review of Georgia law and jurisprudence, we find that the jurisdictional touchstone of "transacting business within the state" is interpreted in Georgia consistent with the pronouncements on due process by the United States Supreme Court. In particular, we note the Georgia courts' citation of and reliance upon Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). See, e.g. Yukon Partners, Inc. v. Lodge Keeper Group, Inc., 258 Ga.App. 1, 572 S.E.2d 647 (2002). The Burger King ruling has great relevance for the measure of Grant's contacts with the State of Georgia resulting from his execution of the 1994 Agreement. By that agreement, he first obtained the hotel license issued by the nationwide organization headquartered in Georgia.
The defendant in Burger King was a Michigan resident who contracted with a Florida-based fast food chain. The court found that the parties' agreement established a franchise relationship with the *263 Miami corporation, was governed by Florida law, and required that fees and business information be continually forwarded by the defendant to the Miami headquarters throughout the term of the contract. The court reviewed the contract's choice of Florida law provision which employed language identical to the language in the present 1994 Agreement selecting Georgia law. The court recognized the choice of law provision as reinforcement of the defendant's "deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there." Id., 471 U.S. at 482, 105 S.Ct. 2174. The court reasoned that "[i]t is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Id., 471 U.S. at 479, 105 S.Ct. 2174. After making that analysis, the court upheld the exercise of personal jurisdiction concluding that the defendant has "established a substantial and continuing relationship with Burger King's Miami headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and has failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair." Id., 471 U.S. at 487, 105 S.Ct. 2174.
Grant does not argue that his relationship with Holiday under the 1994 Agreement was significantly different from the relationship of the franchisee and franchisor in Burger King. We likewise find that Grant's negotiations and course of dealing with Holiday under the 1994 Agreement demonstrated that Grant purposefully established minimum contacts within the State of Georgia. Instead, Grant argues that the 1994 Agreement was no longer the basis for the Georgia action against him after the agreement's 1996 amendment changed Grant's status to the secondary relationship of guarantor. We do not find that the 1996 amendment altered or eliminated the minimum contacts that resulted from the parties' overall course of dealing.
There are cases, discussed below in our review of the personal jurisdiction over Mrs. Grant, which hold that a non-resident's execution of a guaranty under certain circumstances may not establish minimum contacts with the state of the creditor's place of business. Nevertheless, Grant's guaranty and his ongoing actions with Holiday show that one course of dealing from the time of the initial 1994 Agreement has continued. The 1994 Agreement contemplated that Grant's wholly-owned corporation could be substituted as the licensee under the contract. The Investor Inns Limited Partnership, which was substituted in 1996 as the licensee, was comprised of two of Grant's wholly-owned corporations. Grant's personal liability for the continued performance of the 1994 Agreement remained after the amendment in the form of his guaranty. He continued to manage and operate the Holiday Inn, reporting financial data and submitting payment of fees pursuant to the 1994 Agreement. The technical change in the status of Grant's obligation to Holiday from primary to secondary obligor, if such change did result under Georgia law,[2] did not diminish the possibility that *264 suit on the 1994 Agreement for the contractual liabilities of the Monroe business might continue to be brought against Grant in Georgia. Such litigation against Grant was reasonably foreseeable because after 1996 he remained the principal individual providing management services and carrying out the contract. Accordingly, we find that Joe Bailey Grant purposefully established minimum contacts within the State of Georgia by transacting business with Holiday beginning with the 1994 Agreement. His transacting of business and contacts within that state were not erased by the 1996 amendment, and those minimum contacts could serve as the basis for the exercise of personal jurisdiction over him by the Georgia court.[3]
Appellants next argue that Gail Grant's execution of the two guaranties, without more, is insufficient to support Georgia's exercise of jurisdiction over her, and that Holiday failed to show any minimum contacts between her and the State of Georgia. We find the case Apparel Resources Int'l, Ltd. v. Amersig Southeast, Inc., 215 Ga.App. 483, 451 S.E.2d 113 (1994), instructive. In that case, the court upheld jurisdiction for one defendant based on the parties' contract for printing catalogues. A forum selection clause provided that the corporate defendant consented to suit where the printing plant was located in the event of a dispute arising under the contract. However, the court found that the other defendant, an individual who executed a guaranty, was not subject to jurisdiction in the selected forum because the evidence was insufficient to show that any other negotiations or contacts took place between the guarantor and the plaintiff in relation to the forum. "Under these facts we do not find [that she] purposefully established the minimum contacts with the forum state to justify the trial court's long arm jurisdiction over her. Accordingly, we find the trial court did not have jurisdiction ... and the judgment against her is void." Id. Likewise, under Louisiana law, this court in First Nat'l Bank of Lewisville v. Jones, 35,708 (La. App.2d Cir.2/27/02), 811 So.2d 217, found that letters faxed from out of state to the bank purportedly guaranteeing payment of a third party loan were insufficient to establish minimum contacts between the nonresident defendants, the plaintiff bank and the forum. The trial court's finding that it lacked jurisdiction over the guarantors was affirmed.
Unlike the evidence of Mr. Grant's personal involvement with the negotiation and performance of the Holiday license agreement, the record reveals no such involvement in the license transaction by Mrs. Grant other than as a secondary guarantor of the license obligations. Accordingly, the trial court's finding that Gail Grant had established minimum contacts with the State of Georgia is reversed and that portion of the judgment upholding the Georgia judgment against her is reversed.

Conclusion
The judgment insofar as it makes the Georgia judgment executory against Joe Bailey Grant is affirmed. The judgment making the Georgia judgment executory against Gail L. Grant is reversed. Costs of appeal are assessed to Joe Bailey Grant.
*265 AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Holiday Hospitality Franchising, Inc., f/k/a Holiday Inns Franchising, Inc. v. Grant, 36,035 (La.App. 2 Cir. 5/8/02), 817 So.2d 449.
[2] Grant's limited partnership was not made a party to the Georgia proceeding. The recitations in the Georgia default judgment state that Holiday's complaint against Grant rested on both the 1994 License Agreement and the 1996 Guaranty. Whether Grant remained primarily obligated under the 1994 License Agreement under Georgia law is therefore unclear.
[3] Since our conclusions are based upon the recitations in the Georgia judgment, the parties' contractual agreements, and the testimony at the contradictory hearing, we need not address Grant's arguments regarding the burden of proof in this matter. Regardless of the burden of proof, the record is sufficient to support the finding of Georgia's personal jurisdiction over Grant.