[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14822
Non-Argument Calendar

_____

D.C. Docket No. 4:11-cv-00146-WTM-GRS


WARREN LOKEY,

Plaintiff-Appellant,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver of the business and property of
Darby Bank & Trust Co.,
DARBY BANK & TRUST CO.,
DRAYPROP, LLC,
DRAYPARK, LLC,
MICHAEL BROWN, et al.,

Defendants-Appellees.


_____

No. 14-15079
Non-Argument Calendar

_____

D.C. Docket No. 4:11-cv-00143-WTM-GRS

ROBERT M. OSBORNE, JR.,
DONNA OSBORNE,
DRI, LLC,

                                                        Plaintiffs-Appellants,

                                    versus

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver of the business and property of Darby
Bank & Trust Co., et al.,

                                                        Defendants,

DRAYPROP, LLC,
DRAYPARK, LLC,
MICHAEL BROWN,
REUBEN CROLL,
MARLEY MANAGEMENT, INC.,

                                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Georgia
_____

(April 13, 2015)

Before MARCUS, WILLIAM PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

     Because these two appeals present identical issues, we consolidate them for

disposition.  Appellants bought condominiums in the same building in Savannah,

Georgia in 2005.  In deciding to buy their condos, they say they relied on a

representation, made in a letter from a local bank, stating that renovations to the

building would be finished by a certain date.  It didn't work out that way.

Asbestos was discovered in the building, and the renovations were delayed.  On

top of that, the bank failed and entered FDIC receivership.  Hoping to hold

someone, anyone, responsible, Appellants sued the corporate developer of the

building (Drayprop, LLC) and two of its individual members (Reuben Croll and

Michael Brown).[1]  Appellants also sued the corporate owner of parking lots

adjacent to the building (Draypark, LLC), and the management company

responsible for the renovations (Marley Management, Inc.).[2]  Appellants insist

these Defendants knew (or should have known) that asbestos was in the building,

and, consequently, that the renovations would not be completed by the promised

date.  The district court granted summary judgment for the Defendants.  We affirm.

## I.

We review <u>de novo</u> a grant of summary judgment, viewing all evidence in

the light most favorable to the nonmoving party.  See <u>Owen v. I.C. Sys., Inc.</u>, 629

F.3d 1263, 1270 (11th Cir. 2011).  Summary judgment is appropriate when the

---

[1] Actually, Croll and Brown are members of separate LLCs that are, in turn, members of Drayprop, LLC.  But this fact is not relevant to our analysis, so for simplicity we refer to Croll and Brown as members of Drayprop, LLC.

[2] Appellants also sued the local bank (Darby Bank & Trust Co.), which, after it entered receivership, was replaced in this action by the FDIC.  The district court previously granted summary judgment for the FDIC, and we affirmed that ruling on appeal.  See <u>Lindley v. FDIC</u>, 733 F.3d 1043 (11th Cir. 2013).

3

record presents no genuine issue of material fact and "the moving party is entitled to judgment as a matter of law." Id.

## II.

To begin, Appellants cannot state any claim against Reuben Croll or Michael Brown individually. The district court correctly held that Appellants cannot pierce the corporate veil (really two corporate veils, see supra note 1) to hold Croll and Brown accountable for the acts of Drayprop, LLC. In general, "a member of a limited liability company . . . is considered separate from the company and 'is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company.'" Yukon Partners, Inc. v. Lodge Keeper Grp., 572 S.E.2d 647, 651 (Ga. Ct. App. 2002) (quoting O.C.G.A. § 14-11-1107(j)); see also O.C.G.A. § 14-11-303(a). To hold them personally liable, Appellants must show that Croll or Brown "abused the forms by which the LLC was maintained as a separate legal entity . . . ." Bonner v. Brunson, 585 S.E.2d 917, 918 (Ga. Ct. App. 2003). LLC members abuse the corporation's form if they "conduct[] [their] personal and LLC business as if they were one by commingling the two on an interchangeable or joint basis or confusing otherwise separate properties, records, or control," with the purpose of "defeat[ing] justice or perpetrat[ing] fraud." Id.

4

Appellants adduce no evidence of abuse. They say Croll and Brown participated, solely through their membership in Drayprop, LLC, in crafting the bank letter representing that the renovations would be completed by a certain date. Appellants insist Croll and Brown perpetrated a fraud by making that representation. Even if that were true, Appellants fail to explain how Croll's and Brown's actions—helping write the letter—abused the LLC form. Appellants suggest no commingling of personal and LLC business or similar abusive conduct. The district court did not err by refusing to pierce the corporate veil(s).

## III.

The district court also held that Appellants have not created a genuine dispute of material fact on any of their three causes of action against the corporate Defendants: breach of contract, negligent misrepresentation, and fraudulent misrepresentation. These three causes of action are based on the same alleged misrepresentation: the purported promise in the bank letter that the renovations would be completed by March 1, 2006. Appellants say that was a misrepresentation because the Defendants knew (or should have known) that asbestos was present in the building and would delay the renovations.

First, Appellants cannot state a breach-of-contract claim. A breach-of-contract claim depends, <u>a priori</u>, on the existence of a contract. <u>Cf</u>. <u>Norton v.</u> <u>Budget Rent A Car Sys., Inc.</u>, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010) (elements

of a breach-of-contract claim are breach <u>of a contract</u>, damages, and the right to recover).  This is where Appellants' claim fails.  A contract exists only if parties "assent . . . to the terms of [a] contract."  O.C.G.A. § 13-3-1.  Appellants purchased their condos from sellers who are not parties to this case, and they admit they had no contract with any of the Defendants.  Nevertheless, Appellants maintain they can state a breach-of-contract claim because the Defendants "had an indirect interest in the sale of every unit in the building, even if they were not parties" to any contract.  (Appellants seem to reason that the Defendants had an interest in seeing the condo units sold because they were involved in developing and renovating the building.)  In the absence of a contract—express or even implied— with the Defendants, Appellants' nebulous allegation of an "indirect interest" is insufficient to bind the Defendants or impose contractual obligations.  After all, without a whiff of a contract setting out an agreement, how would the Defendants (or a reviewing court) determine their obligations, or whether they complied?

Second and third, Appellants' negligent and fraudulent misrepresentation claims fail for a similar reason: they have provided no evidence that anyone, let alone the Defendants, made any representation at all about the date the renovations would be completed.  Claims of negligent and fraudulent misrepresentation share one irreducible requirement: a false representation.  See <u>Hendon Props., LLC v. Cinema Dev., LLC</u>, 620 S.E.2d 644, 649 (Ga. Ct. App. 2005) (first element of

negligent misrepresentation is that "the defendant[] negligent[ly] suppl[ied] . . . false information to foreseeable persons, known or unknown"); <u>Grand Master Contracting, LLC v. Lincoln Apartment Mgmt. Ltd. P'ship</u>, 724 S.E.2d 456, 458 (Ga. Ct. App. 2012) (first element of fraudulent misrepresentation is that the defendant "made false representations").

Appellants provide no evidence that the Defendants made any representation about when the renovations would be completed. Appellants say they were promised the renovations would be completed by March 1, 2006. But the only evidence to that effect is a letter from the now-defunct local bank guaranteeing funds for the renovations and stating that if the renovations were not completed by March 1, the bank would release the funds to the condominium's homeowners' association. No rational trier of fact could interpret that spare letter as a representation that the renovations would be completed by March 1. In fact, the letter, which Appellants insist guarantees completion by March 1, explicitly contemplates completion <u>after</u> that date. The letter provides that after March 1, any remaining funds for the renovations would be released to the homeowners' association "to complete items as required."

What is more, whether or not it was a representation about the date of completion, Appellants do not explain how the Defendants (the developer, the owner of the parking lots, and the management company—but not the bank) were

7

responsible for making the representation in the bank's letter.  The district court

did not err in finding no genuine dispute of material fact.

**AFFIRMED.**