A93A0181. BROWN v. UNITED STATES FIDELITY &
GUARANTY COMPANY.
(432 SE2d 256)

COOPER, Judge.

This appeal is from the trial court's grant of summary judgment for appellee, plaintiff below, in an action to domesticate a default judgment entered in a New York state court.

Appellant purchased a limited partnership interest in Palm Beach North Limited Partnership ("PBNLP") by paying $20,700 in cash and signing a promissory note for $293,600. As part of this transaction, PBNLP required that appellant provide a surety to guarantee payments due on the note. Appellee agreed to become appellant's surety, and as partial consideration for this agreement, appellant signed an indemnification agreement in which he promised to indemnify appellee for all payments made and costs incurred if he defaulted. Paragraph 13 of the indemnification agreement stated: "The Undersigned hereby agrees that [this document] shall be deemed to have been executed in the State of New York, and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of New York. *Any action or proceeding of any kind against the Undersigned arising out of or by reason of [this document] may be brought in any state or federal court of competent jurisdiction in any County in the State of New York, in addition to any other court in which such action might properly be brought.*" (Emphasis supplied.) The indemnification agreement also provided that "[t]he Undersigned represents and warrants that he has knowledge and experience in financial and business matters (or has qualified and sophisticated investment counsel)."

When appellant learned that a class action had been filed alleging that the promoters of PBNLP were guilty of securities fraud, he stopped making payments on his note. Appellee as surety made two installment payments to cure the default and then brought suit against appellant in New York to recover for the payments made and costs. Although appellant was properly served with the New York summons in Georgia, he did not answer, and a default judgment was entered against him. Appellee then brought this action to domesticate

the default judgment and moved for summary judgment. After a hearing at which appellant argued that the New York court lacked personal jurisdiction over him, appellee's motion for summary judgment was granted.

1. In his first three enumerations of error, appellant argues that New York law governs all issues in this case, and that under New York law, the foreign judgment appellee seeks to domesticate should not be domesticated. However, appellant failed to provide written notice of his intent to rely on foreign law, see OCGA § 9-11-43 (c); nor did he prove the New York law on which he now seeks to rely, see OCGA § 24-7-24. Accordingly, the trial court did not err in applying Georgia law to determine whether or not the New York judgment should be domesticated. See *Abruzzino v. Farmers' &c. Bank*, 168 Ga. App. 639 (1) (309 SE2d 911) (1983).

2. Appellant contends that the trial court erred in granting appellee's motion for summary judgment because a question of fact remains regarding whether the New York court had personal jurisdiction over appellant. When a suit is brought to domesticate a foreign judgment, the judgment may be collaterally attacked on the ground that the foreign court lacked personal jurisdiction over the defendant. *Economou v. Economou*, 196 Ga. App. 196 (1) (395 SE2d 830) (1990). Moreover, if the foreign judgment is a default judgment entered against a nonresident of the foreign state, there is no presumption of personal jurisdiction and the burden is on the plaintiff seeking to domesticate the judgment, in this case appellee, to negate the defendant's lack of jurisdiction defense. *Atlantic Nat. Bank of Fla. v. Chance*, 194 Ga. App. 634 (391 SE2d 677) (1990).

Appellee met its burden of negating appellant's lack of jurisdiction defense by pointing to paragraph 13 of the indemnification agreement signed by appellant. Contrary to appellant's contention otherwise, he clearly consented to jurisdiction in the courts of New York when he agreed that "[a]ny action or proceeding of any kind against [him] arising out of or by reason of [this document] may be brought in any state or federal court of competent jurisdiction in any County in the State of New York, in addition to any other court in which such action might properly be brought." We cannot read this language as a choice of law provision, and we cannot accept appellant's assertion that it meaninglessly states the "mere truism" that suit might be brought in New York if New York would be an appropriate jurisdiction for suit under general principles of law. See *Ga. Farm &c. Ins. Co. v. Ray*, 148 Ga. App. 85 (251 SE2d 34) (1978). Contractual clauses providing advance consent to the jurisdiction of a court which would not otherwise have personal jurisdiction are valid and enforceable. *Harbin Enterprises v. Sysco Corp.*, 195 Ga. App. 694 (1) (394 SE2d 618) (1990); see also *Nat. Svc. Indus. v. Vafla Corp.*, 694 F2d

246 (11th Cir. 1982). Accordingly, the trial court did not err in concluding that appellant contractually consented to personal jurisdiction in New York as a matter of law.

3. Appellant further argues that, even if paragraph 13 of the indemnification agreement is read as a consent to jurisdiction in New York, reliance on that provision offends principles of due process because its language is not clear enough to provide appellant with fair warning that he might be subjected to the jurisdiction of a foreign court. However, as we discussed in Division 2, we do not agree that the consent contained in paragraph 13 is not clear, and neither the use of the word "may" nor the failure to specify an agent for or means of service renders it ambiguous.

4. Appellant next contends that the contractual consent provision should not be recognized as valid because it was the product of undue influence rather than free negotiation. This contention may be raised to collaterally attack the foreign judgment only if the undue influence, if any, rises to the level of fraud in the procurement of the judgment. See *Economou*, supra. There is no evidence in the record to support the allegation that appellant was unduly pressured or defrauded when he signed the indemnification agreement. Rather, the record shows that appellant was a well-educated medical doctor who chose to invest in a tax shelter requiring a bond and entered into an agreement with appellee to supply that bond. This contention is therefore without merit.

5. In his last enumeration of error, appellant asserts that domestication of the foreign judgment was inappropriate because appellee was a participant in the securities fraud scheme allegedly perpetrated by the promoters of PBNLP. As noted above, a foreign judgment may be collaterally attacked in a domestication action if the foreign judgment was procured by fraud. *Economou*, supra. However, even if we assume appellee participated in the alleged securities fraud — an assumption which has no support in the record — such participation would constitute "intrinsic" fraud which, unlike fraud in the procurement of the foreign judgment, would not undermine the validity of the judgment and could not be raised by collateral attack. See *Dixie Cash Register Co. v. S. D. Leasing*, 172 Ga. App. 424 (323 SE2d 284) (1984). Appellee did nothing to prevent appellant from contesting the New York action. Accordingly, appellant's final contention is without merit and the trial court did not err in granting appellee's motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Beasley, P. J., concur.*

Decided June 4, 1993.

*Scott & Quarterman, Russell T. Quarterman, Donald T. Wells,* for appellant.

*Blasingame, Burch, Garrard & Bryant, William S. Cowsert, John H. Peavy, Jr.,* for appellee.