**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 29, 2025**

# In the Court of Appeals of Georgia

A24A1410. CHIRONSOFT CO., LTD. v. YOKIM MARKETING, LLC et al.

BROWN, Judge.

Chironsoft Company, Ltd., challenges the trial court's denial of its motion to vacate or set aside a default judgment pursuant to OCGA § 9-11-60 (d). For the reasons discussed below, we affirm.

"We review a trial court's refusal to set aside a default judgment for an abuse of discretion, but review questions of law de novo." *Central Mutual Ins. Co. v. Kicklighter*, 339 Ga. App. 658 ( 794 SE2d 258) (2016). The record shows that Georgia companies Yokim Marketing, LLC and Like It System, LLC ("Plaintiffs") filed an action in March 2022, in the Superior Court of Gwinnett County for breach of contract against Chironsoft, a foreign company located in Daejeon, South Korea. On

October 7, 2022, Plaintiffs filed a proof of service, with attached "Certificate," certifying that on September 2, 2022, "in conformity with article 6 of the [Hague] Convention . . . the document" was served on "Yeonggyun Jang[,] Clerk." After Chironsoft failed to file an answer, Plaintiffs moved for default judgment on December 14, 2022, attaching the affidavit of counsel who averred that Chironsoft was served on September 2, 2022, under the "service requirements of the Hague Convention." Thereafter, the trial court entered a default judgment against Chironsoft in the amount of $657,584[1] and decreed that Plaintiffs own all the rights, title, intellectual property rights, and interests in and to the work Chironsoft performed on Plaintiffs' behalf.[2]

In March 2023, Chironsoft filed a motion to vacate or set aside the default judgment pursuant to OCGA § 9-11-60 (d).[3] Plaintiffs responded to the motion and

[1] The amount included contract damages, $1,813 in costs, and $7,607 in attorney fees.

[2] The work was related to building a digital marketing website.

[3] OCGA § 9-11-60 (d) provides:

A motion to set aside may be brought to set aside a judgment based upon: (1) Lack of jurisdiction over the person or the subject matter; (2) Fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence or

2

attached additional evidence of service, including Korean versions of the translated documents (the contracts, complaint, summons, and proof of service), a seal, a list of the documents served, and the affidavit of an attorney in South Korea stating that service was perfected in accordance with the terms of the Hague Convention and South Korean law.

Following a hearing, the trial court denied Chironsoft's motion to set aside or vacate. The trial court determined that Chironsoft was properly served in accordance with the Hague Convention and South Korean law; it failed to show that the court lacked personal jurisdiction because it submitted no evidence in support of its motion; its contacts with Georgia are sufficient to satisfy due process; it purposely availed itself of the privilege of conducting activities in Georgia by entering into a contract with Plaintiffs that contained a forum-selection clause in which it consented to the jurisdiction of Georgia courts; the exercise of jurisdiction was reasonable;

---

fault of the movant; or (3) A nonamendable defect which appears upon the face of the record or pleadings. Under this paragraph, it is not sufficient that the complaint or other pleading fails to state a claim upon which relief can be granted, but the pleadings must affirmatively show no claim in fact existed.

Chironsoft's contractual defenses were not relevant to a motion under OCGA § 9-11-60; and Plaintiffs' liquidated damages were ascertainable from the pleadings.

We granted Chironsoft's application for discretionary review of the trial court's denial of its motion to set aside or vacate the default judgment, and this appeal followed. Citing OCGA § 9-11-60, Chironsoft contends generally that the trial court erred in denying its motion to set aside or vacate because nonamendable defects appear on the face of the record and the trial court did not have personal jurisdiction over it. Chironsoft asserts numerous arguments in support of this general claim, which we consider below.[4]

1. Chironsoft contends that the trial court failed to consider its jurisdiction *before* entering default judgment. This contention is without merit. Georgia law is clear that a defendant in default waives its right to contest the trial court's jurisdiction over its person. See *Stout v. Signate Holding*, 184 Ga. App. 154, 155 (3) (361 SE2d 36) (1987). See also OCGA § 9-11-12 (h) (1) (B). Indeed, "[a]llowing a case to go to default judgment is no better than allowing a case to be tried on the merits before

---

[4] Chironsoft's appellate brief is rather difficult to follow. We appreciate Plaintiffs' attempt to categorize Chironsoft's arguments more logically in their response brief, and we have reviewed Chironsoft's claims of error to the extent we are able.

coming in with a technical defense." (Citation and punctuation omitted.) *Ward v. Marriott Intl.*, 352 Ga. App. 488, 491 (2) (835 SE2d 322) (2019). Once a case is in default, however, a defendant may move to open default or wait until a default judgment has been awarded and then move to set aside the judgment under OCGA § 9-11-60 (d), which is what Chironsoft has done. See *Ward*, 352 Ga. App. at 495 (2) (b). Under these circumstances, the trial court did not err in failing to consider its jurisdiction before entering default judgment in this case.[5]

2. Chironsoft contends that the trial court incorrectly determined that it was lawfully served with process under the Hague Convention[6] and Georgia law. We disagree.

---

[5] The cases cited by Chironsoft in support of its claim are inapposite as they either involve the defendant filing a motion to open default (which Chironsoft did not do); the sua sponte dismissal with prejudice of a complaint; or the domestication of a foreign judgment, which requires the party seeking to domesticate the judgment to negate the defense of lack of personal jurisdiction. See *Standard Bldg. Co. v. Wallen Concept Glazing*, 298 Ga. App. 443 (680 SE2d 527) (2009); *B & D Fabricators v. D. H. Blair Investment Banking Corp.*, 220 Ga. App. 373 (469 SE2d 683) (1996); *Hoesch America v. Dai Yang Metal Co.*, 217 Ga. App. 845 (459 SE2d 187) (1995).

[6] The parties do not dispute that the Hague convention governs the validity of Plaintiffs' service abroad because both South Korea and the United States are signatories to the Hague Convention.

The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, November 15, 1965, 1969 WL 97765, 20 U.S.T. 361, T.I.A.S. No. 6638, went into effect on February 10, 1969. It is a multinational treaty, "[t]he purpose of [which] is to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash v. Menon*, 581 U. S. 271, 273 (137 SCt 1504, 197 LE2d 826) (2017). See also *Mitsubishi Motors Corp. v. Colemon*, 290 Ga. App. 86, 89 (2) (a) (658 SE2d 843) (2008) (the Convention "is a multinational treaty which has the purpose of creating an effective means of serving judicial and extrajudicial documents"). "To that end, the Hague Service Convention specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies." (Citation and punctuation omitted.) *Water Splash*, 581 U. S. at 273. See also *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U. S. 694, 699 (II) (108 SCt 2104, 100 LE2d 722) (1988) ("[b]y virtue of the Supremacy Clause, U. S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies"); *Burda Media v. Viertel*, 417 F3d 292, 299 (C) (1) (2nd Cir. 2005) (where federal law allows for service of process upon an individual in a foreign country "by any internationally agreed

means reasonably calculated to give notice, such as those means authorized by the Hague Convention," service of process on the individual in the foreign country is governed by the Convention) (citation and punctuation omitted); *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas*, 51 F3d 1383, 1389-1390 (IV) (A) (8th Cir. 1995).

In Georgia, service of process on persons in a foreign country is governed by OCGA § 9-11-4 (f) (3) (A), which provides as follows:

> Unless otherwise provided by law, service upon a person from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within the United States: (A) By any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

The Convention sets out specific procedures for effectuating foreign service of process. The articles of the Convention relevant to this case are Articles 5 and 6. Article 5 of the Convention provides that

> [t]he Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either - (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory,

or (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed. Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily. If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed. That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.[7]

And, Article 6 provides:

The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the

_____

[7] As the United States Supreme Court has explained,

[t]he primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. The central authority must then provide a certificate of service that conforms to a specified model.

(Citation omitted.) *Volkswagenwerk*, 486 U. S. at 698-699 (II).

8

form of the model annexed to the present Convention. The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.

Where it applies, "compliance with the Convention is mandatory." *Volkswagenwerk*, 486 U. S. at 705 (II).[8]

Turning back to Chironsoft's argument that the trial court incorrectly determined that it was lawfully served with process under the Convention and Georgia law, we conclude that it is entirely without merit for two reasons. One, whether service of process complied with Georgia law is irrelevant in this case because Chironsoft was served pursuant to the Convention and South Korean law.[9] As subparagraphs (a) and (b) of Article 5 of the Convention clearly provide, once the Central Authority receives a request for service, it must serve the documents "by a

---

[8] Our research has revealed no Georgia case addressing the specific procedural aspects of Articles 5 and 6 of the Hague Convention at issue here. Compare *Mitsubishi Motors*, 290 Ga. App. at 89-90 (2) (a), (b) (concluding that trial court properly ruled that service by mail is permitted under Article 10 (a) of the Hague Convention and that plaintiff exercised due diligence in perfecting service).

[9] Chironsoft does not allege that service was insufficient under South Korean law.

method prescribed by [the] internal law" of the "State addressed" or "by a particular method requested by the applicant" that is compatible "with the law of the State addressed." See *Bevilacqua v. U. S. Bank*, 194 So3d 461, 464 (Fla. Dist. Ct. App. 2016) ("[t]he Hague Convention, a treaty to which the United States and several other countries are signatories, is 'superior to that of any State and local law'") (citation omitted). Here, Plaintiffs executed a USM-94 Form, asking the Central Authority of South Korea to promptly serve Chironsoft "in accordance with the provisions of sub-paragraph (a)" of Article 5, i.e., by a method prescribed by the internal law of South Korea. As explained by the Second Circuit, a USM-94 Form is

> a three-page document that conforms to the Hague Convention's standards for submitting service requests to a country's central authority. The first page lists the names and addresses of the applicant, defendant, and foreign receiving authority as well as the documents to be served attached to the USM-94 Form. The second page of the USM-94 Form is entitled "Certificate," and is submitted blank to the foreign agency. The third page of the USM-94 Form contains a summary of the documents to be served.

*Burda Media*, 417 F3d at 296. Because service was effectuated pursuant to South Korean internal law in accordance with the Hague Convention, whether service was defective under Georgia law has no bearing on this case.

Two, a Georgia court may not go behind the Central Authority of South Korea to determine if proof of service was sufficient or not; by issuing a certificate, the Central Authority of the "addressed State" has certified that service was effectuated in compliance with the foreign government's procedural laws, and "a completed certificate of service is prima facie evidence that the [Central] Authority's service on [the defendant] was made in compliance with the Convention." *Northrup King*, 51 F3d at 1389 (IV) (A). Cf. *Winston v. Walsh*, 5:19-OCGA §-00070-TES, 2020 WL 1493659, at *5 (B) (M.D. Ga., March 27, 2020) (acknowledging that prima facie showing of proper service provided by Article 6 Certificate may be rebutted by arguing a lack of actual notice of a lawsuit or prejudice due to lack of proper service, but going behind the Article 6 Certificate because defendant "attacked the Hague Convention's very application to him" on the ground that plaintiff used the wrong address for service). Here, Chironsoft does not assert a lack of actual notice or prejudice. Thus, there is no merit in its specific arguments challenging the sufficiency of the proof of service, i.e.,

that the certificate of service (a) fails to list the documents served or specify the method of service; (b) was not accompanied by a Korean version or a certificate of translation; (c) did not contain a proper description of the person served; or (d) that the trial court erred in relying on "inadmissible affidavit testimony" submitted by Plaintiffs' counsel and a South Korean lawyer who affirmed that service was effectuated on Chironsoft pursuant to the Hague Convention.[10] See *Koechli v. BIP Intl.*, 861 So2d 501, 503 (Fla. Dist. Ct. App. 2003) (affirming trial court's ruling that defendant was properly served under the Hague Convention even though the certificate of service issued by the Bahamian Central Authority pursuant to the Hague Convention did not specify the method of service).[11] See also *Puigbo v. Medex Trading*, 209 So3d 598, 601 (II) (d) (Fla. Dist. Ct. App. 2014) ("[w]hen process is served and

---

[10] We find no merit in Chironsoft's unsupported claim that the affidavits were conclusory and not based on personal knowledge. See *Goddard v. City of Albany*, 285 Ga. 882, 887 (6) (684 SE2d 635) (2009) ("while a statement in an affidavit that it is based upon personal knowledge is generally sufficient to meet the requirement that affidavits be made upon such knowledge, if it appears that any portion of the affidavit was not made upon the affiant's personal knowledge, or if it does not affirmatively appear that it was so made, that portion is to be disregarded in considering the affidavit") (citation and punctuation omitted).

[11] "Decisions of the courts of sister States, if [on] point, are persuasive authority for this [C]ourt, but are not controlling." *Miles v. State*, 96 Ga. App. 610, 611 (4) (a) (101 SE2d 173) (1957).

return of process is completed by an official of a country that is a signatory to the Hague Service Convention in accordance with Article 6 of the Convention, as it was here, that service is sufficient, and any additional requirement which may be imposed by Florida law is pre-empted"), citing *Volkswagenwerk*, 486 U. S. at 699 (II). Cf. *RDW Capital v. Monesi*, 21-2066, 2022 WL 9575728, at *1 (2nd Cir. 2022) (defendant's argument that documents served under the Hague Convention were required to be translated into Italian failed "because it is the prerogative of the Central Authorities to require translation" under Article 5); *Unite Nat. Retirement Fund v. Ariela, Inc.*, 643 FSupp.2d 328, 335 (II) (S.D.N.Y. 2008) (declining to look behind the certificate of service to adjudicate issues of Mexican procedural law because "[b]y not objecting to the documents and by certifying service, the Central Authority indicated that the documents complied with the Convention and that it had served them in compliance with the Convention, i.e., that it had made service as Mexican law required").[12]

---

[12] For the same reason, we also find no merit in any claim by Chironsoft that the affidavit of service itself proved the impropriety of service because it was deficient on its face.

3. Chironsoft contends that the trial court erred in analyzing minimum contacts to find personal jurisdiction instead of the forum-selection clause, which Chironsoft contends is unenforceable. We disagree.

(a) As this Court has held,

> a defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery.

(Citations and punctuation omitted.) *Fink v. Dodd*, 286 Ga. App. 363, 364 (1) (649 SE2d 359) (2007). See also OCGA § 9-11-55 (a). But, a "default operates to admit only the well-pled factual allegations of the complaint and the fair inferences and conclusions of fact to be drawn from those allegations," and does not serve as an admission of "the legal conclusions contained therein." (Citations, punctuation, and emphasis omitted.) *Fink*, 286 Ga. App. at 364-365 (1). In this case, the complaint alleges that the parties entered into three contracts (Contract #1, Contract #2, and Contract #3), and that Contract #1, the terms of which were incorporated into the other two contracts, provided that "[if] there is any dispute regarding this contract,

14

[Plaintiffs] and [Chironsoft] shall seek the resolution through mutual agreement first, and if no agreement is reached, the issue shall be resolved exclusively in the court that has the jurisdiction over [Plaintiffs'] address." Plaintiffs' address is listed in the complaint as "4191 Pleasant Hill Road, Suite 210, Gwinnett County, Duluth, Georgia 30096."

"The freedom of individuals to contract is part of the basic liberties enjoyed by the citizens of this state and should not be interfered with in the absence of clear necessity." (Citations and punctuation omitted.) *Harry S. Peterson Co. v. Nat. Union Fire Ins. Co.*, 209 Ga. App. 585, 591 (3) (434 SE2d 778) (1993). In that vein, "[i]t is well settled . . . that parties may waive challenges to personal jurisdiction by contract." *YP, LLC v. Ristich*, 341 Ga. App. 381, 382 (1) (801 SE2d 80) (2017). Thus, by executing a contract with a forum-selection clause, a party consents to the jurisdiction of the designated forum court. See *Apparel Resources Intl. v. Amersig Southeast*, 215 Ga. App. 483, 484-485 (1) (451 SE2d 113) (1994). See also *Equity Trust Co. v. Jones*, 339 Ga. App. 11, 11-12 (792 SE2d 458) (2016) (noting that Georgia courts have adopted the Supreme Court of the United States' ruling that "forum selection clauses are prima facie valid and should be enforced unless the opposing party shows that

enforcement would be unreasonable under the circumstances . . . [;] [a] freely negotiated agreement should be upheld absent a compelling reason such as fraud, undue influence, or overweening bargaining power") (citations and punctuation omitted). Cf. *Brown v. U. S. Fidelity & Guar. Co.*, 208 Ga. App. 834, 835 (2) (432 SE2d 256) (1993) ("[c]ontractual clauses providing advance consent to the jurisdiction of a court which would not otherwise have personal jurisdiction are valid and enforceable"). In this case, the parties freely contracted to litigate any dispute regarding their contracts "in the court that has the jurisdiction over [Plaintiffs'] address." Additionally, Chironsoft does not argue that enforcing the forum-selection clause would be unreasonable. See *Houseboat Store v. Chris-Craft Corp.*, 302 Ga. App. 795, 797-798 (1) (b) (692 SE2d 61) (2010) (enforcing forum-selection clause in contract where opposing party had not shown enforcement would be unreasonable). Accordingly, pretermitting whether the trial court based its ruling only on a minimum contacts analysis as Chironsoft alleges, Chironsoft contractually consented to personal jurisdiction in the Superior Court of Gwinnett County.[13] See *Hammack v. Hammack*,

---

[13] Given that Chironsoft is in the position of having admitted each and every material allegation of Plaintiffs' complaint, there is no merit in its claim that the trial court could not consider the forum-selection clause because "[t]here is no verification of the [c]omplaint." Cf. *U. S. Foodservice v. Gourmet Services*, 332 Ga. App. 379, 380-381 (772 SE2d 824) (2015)

281 Ga. 202, 203 (635 SE2d 752) (2006) (affirming denial of motion to set aside on ground other than the one relied on by the trial court because appellate courts "will affirm a judgment, so long as it is right for any reason"); *Smith v. Parks Hotels & Resorts*, 364 Ga. App. 192, 199 (1) (a) (874 SE2d 383) (2022) (same).

(b) Chironsoft further contends that even if the forum-selection clause is interpreted as conferring jurisdiction, reliance on it violates Georgia's public policy because it is vague and ambiguous. In support of this claim, Chironsoft alleges that under the clause, it is unclear what disputes are covered and that the relevant section of the parties' contract "describes an undefined 'Contract' or 'contract.'" We find no merit in this contention as there is nothing vague or ambiguous about the clause.[14]

_____

(reversing denial of motion for default and dismissal of complaint on the ground that, inter alia, evidentiary requirements such as verification of a complaint are inapplicable when a defendant is in default). For this same reason, there is no merit to Chironsoft's claim that Contract #3 does not have a forum-selection clause. As stated above, the complaint alleges that Contract #3 incorporates all terms from Contract #1, including the forum-selection clause. See, e.g., *Azarat Mktg. Group v. Dept. of Admin. Affairs*, 245 Ga. App. 256, 257-258 (1) (b) (537 SE2d 99) (2000) (allegations in complaint that the parties had an agreement and that the defendant refused to pay pursuant to the agreement were sufficient to state a cause of action for breach of contract and were deemed admitted by the defendant's default).

[14] Given that the forum-selection clause in this case is enforceable, we need not address Chironsoft's claim that "there are no minimum contacts sufficient to satisfy due process and assert personal jurisdiction." See, e.g., *OFC Capital*, 285 Ga. App. at 816, 819 (reversing grant of motion to dismiss on ground that forum-selection clause was

See *Brown*, 208 Ga. App. at 835-836 (2), (3). See also *OFC Capital v. Colonial Distrib.*, 285 Ga. App. 815, 816-817 (648 SE2d 140) (2007) (enforcing forum-selection clause which provided that "all legal actions relating" to the agreement shall be brought where assignee's principal place of business is located); *Apparel Resources*, 215 Ga. App. at 483, 484-485 (1) (upholding forum-selection clause which provided that "claims arising out of the contract 'shall be litigated in courts located within the State . . . in which [plaintiff's] plant is located'"). Compare *Central Ohio*, 221 Ga. App. at 434-435 (finding forum-selection clause allowing plaintiff to bring "any action under [the parties'] agreement . . . in the state of [its] choice" unenforceable as overly broad and nonspecific).

4. In related enumerations of error, Chironsoft contends that the trial court erred in denying its motion to set aside or vacate the default judgment because the "purported contracts" attached to the complaint are unsigned, unsealed, and unauthenticated, and the terms of the contracts are ambiguous and, therefore, unenforceable. There is no merit to either of these contentions.

---

unenforceable and not addressing defendant's argument that it lacked sufficient minimum contacts).

As set forth above, "a defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery." (Citation and punctuation omitted.) *Fowler v. Atlanta Napp Deady, Inc.*, 283 Ga. App. 331, 336 (2) (641 SE2d 573) (2007). See also OCGA § 9-11-55 (a). The defenses Chironsoft seeks to assert "are attempts to contest the merits of the case" which it is estopped from doing by virtue of its default. See *Leventhal v. C & S Nat. Bank*, 249 Ga. 390, 393 (3) (291 SE2d 222) (1982). See also *Cohran v. Carlin*, 254 Ga. 580, 585 (3) (331 SE2d 523) (1985) (in light of his default, defendant was estopped from asserting defenses that oral contract was illegal, immoral, contrary to public policy, and that plaintiffs should not have been permitted to use parol evidence to negate an unambiguous written contract). Cf. *Azarat Mktg. Group v. Dept. of Admin. Affairs*, 245 Ga. App. 256, 257-258 (1) (b) (537 SE2d 99) (2000) (allegations in complaint that the parties had an agreement and that the defendant refused to pay pursuant to the agreement were sufficient to state a cause of action for breach of contract and were deemed admitted by the defendant's default). Compare *Stroud v. Elias*, 247 Ga. 191, 193 (2) (275 SE2d

46) (1981) (concluding that trial court should have set aside judgment as to one plaintiff in suit alleging breach of a lease agreement because that plaintiff was neither a signatory to the lease attached to the complaint nor did the "facts alleged within the complaint demonstrate any relationship on which [that plaintiff] might have established any right of recovery").

Additionally, there is no merit to any claim that the trial court erred in relying on the English translation of the contracts attached to the complaint because they are unauthenticated and no certificate of translation appears in the record. As this Court has indicated, the record need not contain the written contract between the parties where the complaint alleges the existence of a contract and the terms to which the defendant contracted. *Redan Shops v. FSFP Atlanta*, 366 Ga. App. 691, 695-696 (1) (883 SE2d 902) (2023). See also *Galanti v. Emerald City Records*, 144 Ga. App. 773-774 (1) (242 SE2d 368) (1978) (existence of a contract and breach of that contract were deemed established by defendant's default). Given that execution of the contracts and breach of those contracts is deemed established by Chironsoft's default, its evidentiary challenge to the attached translations is inconsequential.

5. Chironsoft contends that the trial court erred in finding Plaintiffs' contract claims to be liquidated and failing to conduct a hearing on the issue of damages.[15] We disagree.

"Damages are liquidated when they are an amount certain and fixed, either by the act and agreement of the parties, or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing." (Citation and punctuation omitted.) *Carter v. Ravenwood Dev. Co.*, 249 Ga. App. 603, 605 (2) (549 SE2d 402) (2001). See also *Redan Shops*, 366 Ga. App. at 694 (1) ("[a] debt is liquidated when it is rendered certain what is due and how much is due").

> On a motion for default judgment, the amount of damages must be ascertainable from the pleadings. Mere conclusory allegations of the amount owed are insufficient to render the damages liquidated; otherwise every case where a specific amount is stated in the complaint as due and owing would be turned into a liquidated amount by the default.

---

[15] "The failure to prove damages may constitute a nonamendable defect within the meaning of OCGA § 9-11-60 (d) (3)." *Redan Shops*, 366 Ga. App. at 693. Although we have elected to consider this enumeration, we note that it is not supported by any citation to authority, in violation of Court of Appeals Rule 25 (a) (7). Chironsoft cites to a motion filed in the State Court of Fulton County, "*Appelt v. Formula Const. Group*, 2021 Ga. State LEXIS 7652 (2021)," but that is not binding authority.

(Citations and punctuation omitted.) *GMC Group v. Harsco Corp.*, 304 Ga. App. 182, 183 (1) (695 SE2d 702) (2010). See also *Redan Shops*, 366 Ga. App. at 695 (1) ("[a] bare allegation that an amount certain is due and owing, for example, under a contract or invoice for goods or services is insufficient to render the damages liquidated for purposes of default") (citation and punctuation omitted). In order for a

> trial court to conclude upon default that damages are liquidated and dispense with an evidentiary hearing on damages, the plaintiff must have alleged facts sufficient to show how the amount of damages claimed was calculated, or . . . attach to [its] complaint the relevant contract, invoices, or other documents demonstrating that the plaintiff is due the amount claimed.

(Citation, punctuation, and emphasis omitted.) *Redan Shops*, 366 Ga. App. at 695 (1).

In this case, Plaintiffs alleged in the complaint the existence of three contracts, all of which were attached to and incorporated into the complaint, and that Plaintiffs and Chironsoft entered into all three contracts. The complaint also alleged the contractual circumstances under which Plaintiffs may claim damages; the amount of each contract; the amounts already paid by Plaintiffs under the contracts; and the details of Chironsoft's breach. Plaintiffs further alleged that as to Contract #1, they incurred damages for overpayment in the amount of $145,000, plus daily interest of

22

.2 percent of the full contract amount of $290,000 from December 31, 2020. As to Contract #3, they incurred damages for overpayment in the amount of $34,000, plus daily interest of .2 percent of the full contract amount of $68,000 from October 31, 2021. Plaintiffs' complaint "provides more than mere conclusory allegations." *Redan Shops*, 366 Ga. App. 695 (1). And, since all allegations are deemed established by Chironsoft's default, "the exact amount due is easily ascertainable by simple mathematical calculation, and the damages are liquidated." *Galanti*, 144 Ga. App. at 773-774 (1) (where the complaint alleged the existence of a contract to lease space at a particular rate, that defendant breached the contract, and the amount of money the landlord lost, "these items are deemed established by [defendant's] failure to appear, and the striking of his response;" thus, the damages are liquidated). Compare *Pure Hospitality Solutions v. Canouse*, 347 Ga. App. 592, 597 (2) (a) (820 SE2d 434) (2018) (trial court erred in concluding that damages were liquidated where, inter alia, complaint merely estimated the amount of damages by stating that plaintiff was entitled to damages " 'in an amount to be proven at trial, but not less than $68,000' "). Because Plaintiffs' damages were liquidated and no nonamendable defect was present,

the trial court correctly denied the motion to set aside or vacate the default judgment and this enumeration is without merit.

6. There is also no merit in Chironsoft's remaining contentions that the trial court should have set aside the default judgment because (a) it awarded injunctive relief, and (b) the trial court did not specify the basis for its award of attorney fees and Plaintiffs failed to properly prove such fees as required. The trial court awarded $1,813 in costs and $7,607 in attorney fees, and decreed that Plaintiffs own all the rights, title, intellectual property rights, and interests in and to the work Chironsoft performed on Plaintiffs' behalf.

(a) In *Times-Journal v. Jonquil Broadcasting Co.*, 226 Ga. 673 (177 SE2d 64) (1970), our Supreme Court held that: "[u]nder the Civil Practice Act, in a case where no defensive pleadings are filed, the plaintiff in a case seeking a permanent injunction is entitled to such injunction as a matter of law if the facts alleged, under a proper construction in accordance with the Civil Practice Act, authorize such relief." Id. at 675-676 (2), 678 (3) (reversing denial of motion for default judgment where "[p]roperly construed[,] the plaintiffs' petition showed them to be entitled to the [injunctive] relief sought"). The issue presents a question of law for the trial court,

and "[o]nce such a determination has been made that, accepting the allegations of the plaintiff's claim as true, he is entitled to a decree then such decree must be entered." Id. at 676 (2).

In this case, the contracts were attached to the complaint and incorporated therein, and the complaint set forth the terms agreed to, including Section 15, subsection 1, which states that "[t]he ownership and the intellectual property rights of the end-product of this project shall belong to [Plaintiffs]." (Punctuation omitted.) In their prayer for relief, Plaintiffs "pray that [the trial court] enter such other and further relief as it deems just and proper under the circumstances." Pretermitting whether or not the relief Plaintiffs sought may be categorized as injunctive, "[p]roperly construed[,] [their complaint] showed them to be entitled to the relief sought." *Times-Journal*, 226 Ga. at 678 (3). It follows that the trial court did not err in decreeing that Plaintiffs own all the rights, title, intellectual property rights, and interests in and to the work Chironsoft performed on Plaintiffs' behalf or denying the motion to set aside or vacate on this ground.

(b) OCGA § 13-6-11 allows the recovery of expenses of litigation "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant

. . . has caused the plaintiff unnecessary trouble and expense[.]" As this Court has indicated,

> if a plaintiff in its original complaint puts the defendant on notice that it is seeking attorney fees and expenses under OCGA § 13-6-11 as part of the relief prayed for in the case, and if a default judgment is subsequently entered against the defendant for failing to answer the complaint, then the plaintiff is entitled to an award of attorney fees and expenses as a matter of law from the defendant having caused unnecessary trouble and expense.

*Water's Edge Plantation Homeowner's Assn. v. Reliford*, 315 Ga. App. 618, 620 (727 SE2d 234) (2012). In fact, it is reversible error for a trial court not to grant an award under OCGA § 13-6-11 where a default judgment has been entered on a complaint that included a prayer for fees and expenses under the Code section. See *Cotto Law Group v. Benevidez*, 362 Ga. App. 850, 859-860 (2) (b) (870 SE2d 472) (2022) (reversing and remanding where no fees were awarded after default judgment was entered on complaint that included a prayer for fees under OCGA § 13-6-11). See also *Fresh Floors v. Forrest Cambridge Apartments*, 257 Ga. App. 270, 272 (570 SE2d 590) (2002) (same). Compare *Redan Shops*, 366 Ga. App. at 697-698 (2) (reversing denial of motion to set aside where neither the pleadings nor the affidavit of plaintiff's president

averring what it owed in attorney fees stated "whether the attorney fees claimed were incurred in [plaintiff's] attempts to collect the debt from [defendant], nor do they offer any factual information whatsoever – including the identity of the lawyer or lawyers doing the work, the billing rate, the number of hours billed, or the tasks performed").

In this case, Plaintiffs' complaint included a prayer for attorney fees and expenses of litigation pursuant to OCGA § 13-6-11 exclusively. Plaintiffs also filed the affidavit of counsel, attesting to the rates of counsel and the total amount of attorney fees incurred ($7,607), as well as court costs and service fees ($1,813), and the efforts undertaken to serve Chironsoft under the Convention. Accordingly, there was no failure of proof and no merit to the claim that the trial court erred in failing to specify the Code section relied upon or the reasonableness of the award. Cf. *T.A.I. Computer v. CLN Enterprises*, 237 Ga. App. 646, 648 (1) (b) (516 SE2d 340) (1999) ("on default judgment an award of attorney fees which is based solely on an affidavit is not necessarily erroneous, so long as the affidavit meets the requisite level of proof").

*Judgment affirmed. Dillard, P. J., and Padgett, J., concur.*

27